Eastern District of Kentucky
FILED

JAN 2 5 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-480-KSF

SHARON McGUIRE                                                                             PLAINTIFF

V.                            **OPINION & ORDER**

BOURBON COMMUNITY HOSPITAL                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the defendant's motion for summary judgment [DE #19].

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff began working at the defendant hospital as a medical laboratory technician in November of 1994. In this position, the plaintiff was responsible for drawing and testing blood and urine samples, performing certain routine maintenance procedures on lab equipment, and keeping accurate records and documentation.

     A.     **Primary Weekend Shift Differential**

Because she worked on Friday, Saturday, and Sunday evenings, the plaintiff received a "weekend shift differential," or pay in addition to her regular hourly wage. In early 2004, the plaintiff first learned of a "*primary* weekend shift differential" – an additional amount of money paid to some employees who worked strictly on the weekends that, according to the defendant, was also used to attract applicants to some positions (e.g., when a particular shift or area was short-staffed). It apparently was not granted to all eligible employees and was not offered to any laboratory employee until September of 2003, although other hospital employees had received

the *primary* weekend shift differential as early as November of 1999. In September of 2003, another laboratory technician, Kimberly Darnell, began receiving a *primary* weekend shift differential of $3.00 per hour.

The plaintiff inquired in February of 2004 as to whether she was also eligible for the *primary* weekend shift differential. By e-mail dated March 2, 2004, Human Resources Director John Wilson ("Wilson") indicated that she was eligible and would begin receiving the differential in her next paycheck. However, the plaintiff asked that the *primary* weekend shift differential be applied to her retroactively to her hire date (November of 1994). According to the defendant, Wilson contacted the plaintiff to discuss the matter, but the plaintiff refused to meet with him.

**B.     Cell-Dyn 3700 and WOC Tubing**

With respect to routine maintenance, the plaintiff was responsible for maintaining and keeping maintenance logs for the defendant's Cell-Dyn 3700 ("Cell-Dyn"), a hematology machine that performed a Complete Blood Count ("CBC") diagnostic test that doctors generally order for all patients. This was apparently the only piece of equipment in the defendant hospital capable of performing this test. According to the defendant, two tubes on the machine -- referred to as the WIC tubing and the WOC tubing -- needed to be replaced on a monthly basis and that change recorded in the maintenance log. The Cell-Dyn itself also had an internal computer that reflected the dates of certain maintenance.

On March 24, 2004, the WOC tubing burst, rendering the Cell-Dyn inoperable. There was no replacement WOC tubing because none had been ordered, so the Cell-Dyn was essentially inoperable and unable to perform CBC tests for hospital patients for at least two days.

Laboratory Manager Donna Judy ("Judy") thereafter conducted an investigation to determine why the tubing on the Cell-Dyn may have failed.

The defendant asserts that according to the handwritten and internal machine maintenance logs, the plaintiff changed the WOC tubing on March 5, 2004. Judy then determined that the defendant hospital had last received a shipment of WOC tubing on August 27, 2003. Considering the number of WOC tubing packages received in that shipment and the hospital's practice of ordering tubing only when the last pack was in use, Judy concluded that the defendant hospital would have had enough tubing to last only through the month of January of 2004. Based on this information, Judy concluded that the plaintiff had falsified the maintenance records by representing that she had changed the WOC tubing on March 5, 2004, when in fact she had not. After discussing the matter with Wilson, the defendant terminated the plaintiff's employment on April 5, 2004.

Thereafter, the plaintiff filed for unemployment compensation benefits, which the defendant opposed and the Division of Unemployment Insurance initially denied. However, the plaintiff was granted benefits on appeal. The plaintiff originally filed her complaint in Fayette County, Kentucky, Circuit Court claiming that the defendant used the WOC tubing incident as an excuse to fire her to avoid paying the primary weekend shift differential that was due to her. She also claimed that the defendant had wrongfully attempted to prevent the plaintiff from receiving unemployment benefit compensation. The defendant timely removed the action to this Court, where the plaintiff seeks both compensatory and punitive damages.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. Id. at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

### B. "Abandonment" of Claim

In its motion for summary judgment, the defendant first argues that the plaintiff "abandoned" her claims based on her deposition testimony. When asked what she thought was behind her termination, she responded "because I'm an older person . . . and because of the overtime and extra shifts that I was working, I was making a lot of money." The defendant asserts that the plaintiff has not pleaded either of these theories nor presented evidence of them, and in testifying as she did, has abandoned the claims as originally pled in her complaint.

The defendant has provided no legal support for its theory of "abandonment by deposition" and the Court can find none. The plaintiff's testimony may reflect her personal opinion as to why she was terminated, but the legal issue of whether a claim has been abandoned or waived requires much more than a lay person's opinion. The Court finds that the plaintiff's deposition testimony in no way indicates that the plaintiff has abandoned the legal allegations in her complaint that the defendant used the WOC tubing incident as an excuse to terminate her employment to avoid paying her back wages she was allegedly owed. It may turn out that the plaintiff's deposition testimony does not support her claims, but this is more properly tested in the summary judgment context than in a waiver or abandonment context.

### C. Wrongful Discharge

In her complaint, the plaintiff claims that the defendant unfairly terminated her employment "for the sole purpose of attempting to prevent Plaintiff from recovery of the wages due to her." The complaint does not clarify whether the basis of the plaintiff's claim is statutory,

constitutional, or contractual, and the plaintiff's pleadings do little to elucidate this question. She asserts that she "possessed a clear right to the primary weekend differential," but does not inform the Court of the basis for such a right. The plaintiff has not pled a discrimination claim under either Title VII or the Kentucky Civil Rights Act or cited any specific statute or contract.

She apparently argues that she had some sort of implied contract with her employer under which she is entitled to receive the primary weekend shift differential dating from her original hire date, citing Shah v. General Elec. Co., 816 F.2d 264 (6th Cir. 1987). In Shah, the Sixth Circuit noted that Kentucky law[1] recognized a cause of action for breach of an implied contract to discharge only for cause. There, the plaintiff alleged that GE had failed to follow the terms of its own policy guide when it did not provide him with the opportunity to correct deficient work performance, and that GE could only fire him for cause based on his employment contract. Thus, Shah informs us that an employee *may* in certain circumstances be protected against discharge without cause under an employment contract under Kentucky law:

> We join a number of other jurisdictions which hold that parties may enter into a contract of employment terminable only pursuant to its express terms -- as "for cause" -- ***by clearly stating their intention to do so***, even though no other considerations than services to be performed or promised, is expected by the employer, or performed or promised by the employee.

Id. at 272 (quoting Shah v. American Synthetic Rubber Corp., 655 S.W.2d 489, 492 (Ky. 1983)) (emphasis supplied). Such protection could also be provided under a collective bargaining agreement or civil servant statutes and ordinances. Shah, 655 S.W.2d at 492.

---

[1] In a diversity action such as this, the Court applies Kentucky substantive law to state-law claims. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

In the present case, however, the plaintiff has not alleged a basis for any contract – implied *or* written *or* oral – between her and the defendant, and has provided no evidence of any such contract. She has presented no evidence of a "clear statement" of the parties' intention to enter into a contract of employment terminable only by its terms. She does not allege a collective bargaining agreement or any other statutory basis for her "right" to the primary weekend shift differential. She has not offered any evidence to counter the sworn statement of the defendant that the primary weekend shift differential was a discretionary tool used by personnel in instances where it might need to induce a potential employee to work a specific shift that was short-staffed, for example. Rather, the plaintiff has offered only a conclusory statement that she and the defendant had an implied contract and asserts a vague "right" to the primary weekend shift differential. However, this is insufficient to sustain her claim.

The plaintiff apparently also argues that her termination was in retaliation for asserting her right to the primary weekend shift differential. In order to prove retaliatory discharge under Kentucky law, the plaintiff must first get around Kentucky's "terminable-at-will" doctrine, which states that an employer may discharge an at-will employee for good cause, no cause, or for a morally indefensible cause. Grzyb v. Evans, 700 S.W.2d 399, 400 (Ky. 1985). The Kentucky Supreme Court has delineated two narrow exceptions to the employment-at-will doctrine: (1) the discharge is contrary to a fundamental and well-defined public policy as evidenced by constitution or statutory provision; or (2) the discharge is for an employee's refusal or failure to violate a law in the course of her employment.

Neither of these situations apply here. The second provision is not at issue in this case. As discussed above, the plaintiff has not alleged any constitutional or statutory violation by the

defendant, so her claim does not fall within the first proviso, either. This conclusion is supported by a case cited by the plaintiff, Wyant v. SCM Corp., 692 S.W.2d 814 (Ky. Ct. App. 1985). In that case, the Kentucky Court of Appeals noted that a supervisor who claimed he had been fired for "championing a [co-worker's] right to receive overtime pay pursuant to an unwritten agreement" had no claim where "there was no proof that [the co-worker] possessed a statutory right to overtime pay." Id. at 815-16. Simply put, the Court cannot discern any claim under which the plaintiff would be entitled to the primary weekend shift differential.

### D. Interference with Unemployment Compensation Benefits

The plaintiff also claims in her complaint that the defendant wrongly attempted to prevent her from receiving unemployment compensation benefits by opposing her application for such benefits. There is nothing in the record to expand upon this claim, other than this conclusory statement by the plaintiff, and the plaintiff does not respond to the defendant's motion for summary judgment on this point.

To the extent that the plaintiff means to challenge the unemployment compensation benefits ultimately awarded to her, it appears that this Court does not have jurisdiction. K.R.S. § 341.450(1) (allowing appeal from Commissioner's decision only in the Circuit Court of the county in which the claimant was last employed). If the plaintiff intended to bring a different challenge, it is not clear to the Court exactly *how* the defendant wrongly interfered with the plaintiff's attempts to obtain unemployment compensation benefits. If it is the plaintiff's suggestion that opposing an application and providing information in response to an agency request were sufficient to establish unlawful interference by an employer, then all employee applications would be automatically approved and an employer would never have an opportunity

to oppose them. This would make no sense. Regardless, the plaintiff has not provided any support – either in law or fact – for this claim and it must, therefore, be dismissed.

### III. CONCLUSION

Based on the above, the Court being otherwise fully and sufficiently advised, HEREBY ORDERS that

    (1)    the defendant's motion for summary judgment [DE #19] is GRANTED;

    (2)    judgment in favor of the defendant will be entered contemporaneously herewith; and

    (3)    this is a final and appealable Order.

This 24TH day of January, 2006.

KARL S. FORESTER, SENIOR JUDGE